May it please the Court, good morning, Your Honors. My name is Lorne Tran, and I represent the plaintiffs and appellants in this matter. I would like to reserve three minutes for my rebuttal. Thank you. I will address the two claims, two of the claims at issue here. First is the third-party beneficiary claim, and the second is the negligence claim. First, with respect to the third-party beneficiary claim, I just want to remind the Court that Retailics entered into a contract here to install and provide point-of-sale services to the franchisee's gas stations, the plaintiff's gas stations. And also, there's no dispute that Retailics entered into a contract to provide maintenance services for those point-of-sale services to the franchisees. As I understand it, even though they're not listed as third-party beneficiaries in the contract between Retailics and BP, your claim is that they're implied beneficiaries because they were getting the software for their point-of-sale computer system, right? Yes, Your Honor. Okay. So what are you doing here? Why are you not before an English Court of Chancery? The issue about the English Chancery, I think we're talking about a venue clause that the district relied on in the ruling. The — in the Jones case, Your Honor, the Ninth Circuit has set forth a public policy protecting the franchisees from — You're not a franchisee of defendant. I'm sorry? You're not a franchisee of this defendant. I am not a franchisee of defendant, but I am a franchisee who benefits from the contract. But you're citing to us the Jones case and all this franchise law, and there's no franchise relationship whatsoever between you and this defendant, is there? That's fair, Your Honor. How does that case apply? It doesn't. The whole idea of the public policy articulating Jones, Your Honor, is to protect the franchisees. Right, but you're not a franchisee of this defendant. You can sue BP here, no question about that. But what does that have to do with this defendant? In the Jones case, even assuming, Your Honor, that the public policy doesn't apply to franchisees. Where's the public policy? I don't understand any public policy. This isn't a franchisor that somehow has a potential of abusing you. You're trying to horn in on the contract between BP and this defendant. That's not a public policy where the State's interested in protecting you as a franchisee. In the Jones case, Your Honor, the Court stated that even assuming there's no such public policy doesn't apply. The Court in Jones cite to the Supreme Court case in Bremen where it says even if there's no such public policy, if the application of this clause caused inconvenience and effectively deprived of my client a day in court, it'd make it so difficult for my client, for our party to. Well, let's stop you right there. Because the Supreme Court's been pretty clear in its personal jurisdiction cases that you can't haul somebody in. And it's been pretty clear in its cases with regard to choice of forum that if you've got an agreement that says the forum is elsewhere, those principles aren't overridden because the plaintiff thinks it's more convenient to sue where the plaintiff lives. Is that the public policy you're trying to advocate? That there is a policy that it's okay for the plaintiff to sue wherever it lives because it's more convenient for the plaintiff? It is not, Your Honor, but the public policy. But what the Jones case, citing to this Bremen case by the Supreme Court, Your Honor, is that if an application or a clause makes it virtually impossible for the client to make it so inconvenient to deprive them of a day in court, then that clause should be unenforceable. We have mom-and-pop's company here, Your Honor, doing business in little small-town gas stations, forcing them to go to London. The thrust of your argument is that no forum selection clause, if it involves a foreign venue outside the state of California, would ever be enforceable if it involves small entities like limited partnerships or individuals who operate these gas stations and mini-marts. And California law and public policy doesn't go that far, does it? If so, give me the best case you've got to support your argument. I don't think it goes that far. I agree with you, Your Honor. But the line, the reasoning in Jones and the language in Jones referring to the Bremen case. Counsel, with all respect, I agree with Judge Clifton that if we were looking at the breach of a franchise agreement in which there was a culpable claim that the plaintiffs were third-party beneficiaries, we'd be having a very different discussion. But if you are claiming rights under an international contract entered between an Israeli corporation and, what, an English corporation, then I think we are a way beyond the public policy law that California courts have wrestled. Let me suggest to you why we believe that the public policy articulate applying to franchisees applies here, Your Honor. As we allege in the complaint, and it's undisputed, my clients were required as part of their franchise agreement to buy the retaliate point-of-sales software. Who required them to do that? BP required them to do that. You sued BP in California? Yes. Why does that cover this defendant? Because this defendant didn't require you to buy anything. This defendant provided services. This defendant received money. Did this defendant require you to buy anything? No, Your Honor. So how does the policy you're advocating apply to this defendant? Because this defendant entering a contract with BP as part of his franchise agreement requiring us to buy the product. You're explaining why this case is different from a franchise agreement case, not how this case is the same. This case is no different. This is at the heart of a franchise agreement case. Wait, wait, wait. You just told me it is different. Because your franchise is with BP, and it's BP that's requiring you to buy the system. This defendant isn't requiring you to buy the system. This defendant isn't your franchisor. And now you tell me it's no different? You've just told me what the differences are. Maybe I didn't make myself clear, Your Honor. My point, Your Honor, is that under the franchise agreement, we're required to purchase this product. And this transaction doesn't happen in a vacuum, Your Honor. This transaction happens as part of the franchise agreement requiring our client to buy the product. But the problem is, as I understand it, aren't there something like 17,000 locations in eight different countries around the world that involve entities that have contractual relationships with BP that got this Retallax software? I think that's an argument made by Retallax. I don't know whether that's the case. My understanding, Your Honor, is the contract at issue, the franchisee at issue, are BP franchisees in the U.S. And the software here, my understanding, is different from the software. Because even with respect to the BP ---- Wasn't the software supplied under the same contract? I don't know whether the software was provided to the other countries. I don't have that knowledge. You have the pleading states, Your Honor. My understanding is ---- Well, then we'll take it as a hypothetical. Assume that there are similar entities in Canada to your clients. Would the question on the enforceability of the Forum Selection Clause be different if it involved parties in a foreign country as opposed to California parties? There's no question that if Retallax sued BP, it would be bound by the Forum Selection Clause, and they'd have to bring a claim in England, right? Yes, Your Honor. So why should we declare that the Forum Selection Clause can be valid in some circumstances but invalid in others depending on who the third-party beneficiary is by invoking these public policy rationales? That seems to me to be a really bad rule of law that leads to inconsistent decision-making.  But my ---- the way I view this matter, Your Honor, is this is part of the same transaction involved in a franchisee's agreement. This is a condition of a franchisee obtaining the franchise with BP. You're really looking to ask us to reform the contract depending on who the litigants are who are trying to come in under what I will call the master agreement between Retallax and BP. Yes. I understand your point, Your Honor. It's well taken. But I think, again, I think it's at the heart of this is a franchise agreement. Why don't we have your argument? Do you want to touch on the other two claims? The next point I want to follow up is there is another agreement called the service agreement. The service agreement, we are aware of that existence. It was never provided, professional service agreement, between BP and Retallax. We were never provided with that agreement. And at the pleading stage ---- Isn't that a related separate maintenance and upkeep agreement, troubleshooting agreement, between the vendor of the software that if there are problems with it, Retallax agrees to come out and address them? I just don't know. I have never seen this agreement because I think at this pleading stage, what the unfairness of it is, I think Retallax gets to decide, okay, this is the agreement that should be applicable to your claims. There's nothing, trust us, there's nothing in the other agreements. And all we ask from the district court is to allow us to see this agreement and, you know, perhaps provide an independent basis for our claim of third-party beneficiary or negligence claims. Now, with respect to the other point on the ---- with respect to the negligence claim, Your Honor, the negligence claim, I think it all comes down to whether or not there's a duty here with Retallax. And the case law, the standard, obviously, I don't think there's any dispute here. The standard is whether the manufacturer knew that the product was destined for a particular customer and whether they knew about a particular use for the product as opposed to, you know, the public at large. Your Honor, this is not Apple selling, you know, iPhones to the public at large. Clearly, there will be no duty, special relationship. Why doesn't the ---- what takes this out of the economic loss rule? Because there's special relationship, Your Honor. But the special relationship you've described is the special relationship that would apply to any recipient of a service or a product. That can't be what the special relationship means, is it? Your Honor, this is a highly customized software, Your Honor. This is not something that off the shelf that they just sell to us, Your Honor. Well, it's not highly customized for your individual ---- I mean, they're not doing it differently for each gas station. It's highly customized for BP. Highly customized. What makes a special relationship with your client? It's highly ---- my client was part of the class of the franchisees, BP franchisees, to whom this software was made specifically for. It's a small subset. It's not even ---- Well, what makes that a special relationship to take it out of the economic loss rule? Because BP, because Retalix knew what special need my clients will have, they have to customize to be compatible with the BP system. It's not the same thing even, the same software system where they provide to, let's say to a gas station, 476 gas station or Shell gas station. It's highly customized. That's why they have to ---- Customized for BP, not customized for Green Desert Oil Group. Customized for Green Desert Oil Group and other BP franchisees because we have to be compatible with the BP system. Do you mean it's customized for Green Desert or do you mean it's customized for BP franchisees? Well, how is that different from BP and what gives any individual franchisee a special relationship with Relix? Your Honor, the comparison is not between us and BP. The comparison is whether or not it's highly customized for the BP franchisees as opposed to the general public to whom Retalix sells this product. That is different, Your Honor. It's not the same thing as because even the ---- I don't understand how that relates to special relationship, though. The special relationship only requires the manufacturer to know who they were building it for and what's the intended use for for this particular people that they're selling to. Your Honor, this is not a product where it just be off the shelf where they go out and they sell to the public. They have to go in and do beta testing at the franchisees' locations. They have to be compatible with the BP software. But Retalix didn't do that at every location, did they? They did not do that. They developed what I'll call a master software for all franchisees, but then I assume some technician from somewhere came and installed it. Yes, Your Honor. But those are not necessarily Retalix employees. The Retalix employee came at the beta testing. Well, yeah, at the beta testing. But as I understand it, Retalix only has, like, what, 350 or 400 employees, though? Yeah, they didn't go everywhere. No, maybe in 17,000 locations at the same time. That's fair. I'm not suggesting that. I'm just saying that with respect to the BP franchises. I think that's the question Judge Clifton was wrestling with over what evidence is there of a special relationship with Green Desert. Not specifically with Green Desert, Your Honor. With respect to BP franchises, and that's what we're looking in terms of a special relationship. All right. Do you want to save some time? Yes, Your Honor. Thank you. All right. Let's hear from BP. Good morning. Good morning, Your Honors, and may it please the Court. My name is Richard Zelikov, and I'm here with my colleague, Christina Costley, on behalf of Appellee Retalix Ltd. This Court should affirm the order of the district court dismissing Appellant's claims against Retalix Ltd. as Judge Breyer properly recognized that Retalix has been brought into a dispute between BP and its franchisees to which Retalix doesn't belong. I think appellants have tried to twist the law on the contract between BP International and Retalix to sue Retalix merely because Retalix licensed one part of a POS BOS system to BP International that BP then combined with 11 other software and 19 other hardware components and sold to BP service stations and convenience stores around the world, including appellants. That doesn't work. I want to start with a plaintiff's contract claim. When you say 11 software and 19 hardware components from other vendors, in other words, Retalix was only one of the 30? That is accurate. If you look at, I think it's Supplemental Excerpts of Record 139, there's the contract between BP and its franchisees that has the list of equipment that will make up the POS BOS system, and there are 30 components there of which Retalix is only one. Has there been a separate action filed between he and Retalix over this? I think that's outside the scope of the record, and I think You can know the answer? Yeah. I mean, the answer is there are disputes going forth, at least in terms of letters. No actual lawsuit has been filed yet. And there was some suggestion in the record that BP was trying to obtain an assignment of claims that would otherwise be brought through it against Retalix? That is correct. It is my understanding that BP made an offer of settlement to various franchisees that it has in the United States, and one of the terms of that settlement was that the franchisees assign any claims that they might have against Retalix to BP. I think BP's, you know, intention in doing that, and I obviously can't speak for BP, is that, as Your Honors have seen, in the MSLA, there's a particular provision whereby all third parties who receive the software license, sublicense from BP, BP is responsible for enforcing their rights. And I think BP is seemingly taking steps to do that. If that's the case, isn't that a pretty good piece of evidence to support the plaintiff's argument that they are implied third-party beneficiaries under the contract? I don't think so, because there's a difference there. Well, one, to be a third-party beneficiary under the contract, even in the language of their best case, which is Prouty, you have to necessarily, the contract necessarily has to require a benefit to accrue to the particular third-party beneficiary. Here, BP has complete discretion as to whether it, to whom it sublicenses. It never had to sublicense to these particular plaintiffs. And even with respect to the maintenance provisions, which I think is one of the things that the plaintiffs focus on, or at least that they focused on in their briefs, Section 1.4 of the MSLA says BP, at its sole option or sole discretion, can choose not to acquire the maintenance services. So the plaintiffs are at most incidental beneficiaries of a contract that BP has negotiated for itself. And I think you can see that by looking at the plain language of this contract, where it nowhere mentions the BP franchisees in the United States. It expressly identifies the third-party beneficiaries of the contract and doesn't include them. It includes BP affiliates and licensed companies. And I think Judge Breyer was exactly right when he decided as a matter of law that that provision established that the plaintiffs are not third-party beneficiaries of the contract. But you would agree, I'm trying to find, what's the provision, which paragraph, that speaks about third-party beneficiaries? It's Section 6.3, Your Honor. It's supplemental excerpts of record under seal. 10 and 11. Sorry? 10 and 11. Yeah. There is some curious language in there that seems to suggest that any claims against anybody else who claims to be third-party beneficiaries essentially are nonenforceable. And when I read that, I thought, how can two parties to a contract purport to bar claims by others who may claim to be third-party beneficiaries? I don't think it's saying they're unenforceable. It's providing them with a particular mechanism by which they can enforce, whereby they can and they have sued BP for their purported errors in connection with the BOSBOS system. There's no question, I don't think anyone can question that BP has the resources, if necessary, to satisfy any of those claims. And then anything further is between BP and Retalix. I guess the language to which I'm referring is at the top of page 11. Correct. Section 6.3. All demands by any BP affiliate and or any third party that shall receive the licensed software in terms of this agreement shall be filed by BP on behalf of the said BP affiliate or the third party and may not be filed directly by any BP affiliate and or the third party. Correct. And I think BP is taking steps. I mean, the record shows that BP is taking steps to give effect to that provision, whereby, I mean, there isn't an indication there that they need to bring those claims immediately against any third party or on behalf of any third party. If there were, you know, maybe there would be a different argument, but that's not what we have here. That would explain why BP, as part of the settlement agreement, is asking for an assignment of claims so that BP, if it chooses to, may enforce that provision. That's my understanding. Moving on to the, you know, even if the parties are third party beneficiaries, I think Your Honors have pointed out this should be brought in England under English law. Can you help me? Your counsel was uncertain with regard to the total number of locations. Am I corrected? I read in the record it was 17,000. There are 11,000 locations within the United States and then 20-plus thousand locations worldwide. So, you know, and as Your Honors have clearly pointed out, Jones does not apply here. The legislature didn't say everybody who does business with a franchisee in California must have all of their disputes decided in California. It's a much more limited ruling. If we turn to plaintiffs' claim for negligence, they have failed to allege that Retalix owed them any duty for which they can obtain economic losses. The economic loss rule is set forth very clearly in a number of California cases, including Seeley, Oss, Ott, Desert Healthcare, and says, you know, the recognition of a duty to manage the business affairs so as to prevent purely economic loss to parties is the exception, not the rule in negligence law. California does recognize a very narrow exception to that general rule when the plaintiffs can allege a specific relationship between the defendant and the plaintiff. Plaintiff has made this argument about the J.R. case. Is that what you're referring to? That's the J.R. case, which I think is, well, it's an outlier. It's a case that the restatement third of torts on economic loss, which is in the process of being drafted, says is wrongly decided and is an outlier. But as I understood your argument, even if it applies, your position is that the plaintiffs could not establish all of the six factors, particularly the special relationship factor. I think that's entirely accurate. I mean, if you look at what Greystone says, Greystone says specifically that the plaintiff has to be, the intent has to affect the particular plaintiff and not a class of persons to which the plaintiffs belong. Desert Healthcare says the exact same thing. And in every situation where the special, there are very few situations where any court has accepted the special relationship exception. Because it's a narrow departure from a basic rule that contract law is about economic loss and tort is about personal injury and property damage, they've applied it to at most a single individual. And here we have 19 plaintiffs just here who purport to represent a class of 10,000 franchisees in the United States, asking for, in my view almost, would be the largest expansion of tort liability since we sort of adopted products liability law, strict products liability law many, many years ago. And that's just not what goes on here. You know, I think their conclusory allegations to fit into the narrow exception don't work. We've got that Retalix licensed the software to BP to use as it wanted. It had no intent to affect any specific BP affiliate, dealer, franchisee, store, contractor. Because BP could use the software anywhere within 18 countries around the world. It wasn't foreseeable to Retalix that any particular store, or any store for that matter, would be harmed. There's no close connection between Retalix and the harm, given that this is part of a complicated POSBO system with multiple parts. No moral blame to attribute to Retalix. This is, you know, software that may not work perfectly. That's not something for which we assign moral blame. And, you know, if we were going to have a public policy, that software all had to be perfect before we could, you know, allow anyone to use it, well, I don't think anyone here would be typing on a computer or playing with an iPad, because nothing would ever get released if these software manufacturers could be potentially responsible for economic losses. You're assuming my laptop didn't just crash in the middle of it, due to a bug in it? I'm assuming that your laptop may have crashed in any event, and yet you would still not give up that laptop and rather handwrite and use a ditto machine, or whatever we did at one point in time. You're not arguing for a special exception for software developers? I'm not. I don't think there is a special exception, but there is a public policy aspect to the Jair exceptions that I think are somewhat relevant to software manufacturers. In any, you know, I have a few more minutes, but I just think Judge Breyer got it right. The judgment of the district court should be affirmed, and unless the court has additional questions, I have nothing further. By the way, does BP have any gas stations that it owns directly? It does have certain gas stations that it owns directly. Is that included in the $10,000? I believe it does. Thank you very much, Your Honors. Fran, I think you've got about a minute and a half left. Thank you, Your Honor. To get back to the issue on the venue going to London, Your Honor, I have the Jones case with you. Again, I invite the Court to look at the case where the Court discussed the Brehman decision by the Supreme Court, Your Honor, and that will be at page 4 in the first section, Analysis and Enforcement. Page what? Yeah, sorry. 497, Your Honor. 497. 211F3D497. The Brehman case, Your Honor, to answer Judge Clifton's question whether or not, you know, any, the application of this clause depends on the means or the particular plaintiff, Your Honor. The answer is actually yes on the Brehman case. The Jones court cited Brehman to say that even if there's no public policy, it may nevertheless be unreasonable and unenforceable if the chosen forum is seriously inconvenient for the trial of the action. And he went on to quote Brehman by saying that in such circumstances, it should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will, for all practical purposes, be deprived of his stay in court, Your Honor. But the biggest problem, as Judge Clifton pointed out when you were discussing this earlier with Jones, is that it all arises out of a franchisee agreement or franchise agreement. Yes. You don't have a franchise agreement that you're seeking third-party beneficiary rights under. But the, I think there's two different issues, Your Honor. The franchise agreement provide a context for the public policy, but what the Jones was saying. I don't think that BP is disputing your claim that the public policy with regard to franchise agreements is as you represent it in California. The question is whether that doctrine can be engrafted into a third-party breach of contract that is not a franchise agreement. Yes. Even the citation I just cited, what it says, Your Honor, is even if there's no such public policy, then you look at whether or not that we deprive, effectively deprive the day in court. We're back to the conundrum that you and I discussed earlier about what do we do now that I know we have 30,000 potential claimants here all over the world. Is it going to vary depending on the location of the claimant as to whether or not the Forum Selection Clause is enforceable? It would depend on the law of the country where the issue is argued, Your Honor. That's the concern, I think. Okay. Thank you, Your Honor. We are out of time. Thank you both very much. Very well argued. The case just argued is submitted, and we are adjourned until 9 a.m.
judges: Duffy, Tallman, Clifton